IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MURAT CAGRI YASAR,                      §
                                        §
            Plaintiff,                  §
                                        §
v.                                      §          CIVIL ACTION NO. H-05-2448
                                        §
DEPARTMENT OF HOMELAND                  §
SECURITY, et al.,                       §
                                        §
            Defendant.                  §

## MEMORANDUM AND ORDER

The plaintiff, Murat Yasar, filed this action against the Department of Homeland

Security, through its Secretary Michael Chertoff, the United States Bureau of Citizenship and

Immigration Services ("USCIS"), and Paul Novak in his official capacity as Director of the

USCIS Regional Service Center in Vermont.  Yasar, who seeks a declaratory judgment

regarding an adverse decision from the USCIS on his petition for an employment-based

immigration visa, has filed a motion for summary judgment [Doc. #10]. The defendants have

filed a cross-motion for summary judgment, arguing that Yasar is not entitled to the visa he

seeks and that the administrative decision to deny his visa petition was correct [Doc. #11].

Yasar has filed a response [Doc. #12].  After considering all of the pleadings, the summary

judgment evidence, and the applicable law, the Court grants the defendants' motion, denies

the motion filed by the plaintiff, and dismisses this case for reasons that follow.

## I.    __BACKGROUND__

The facts are not disputed in this case.  The only issue is whether the USCIS wrongfully denied an employment-based immigrant visa petition filed by Yasar, seeking classification as an "alien of extraordinary ability."  This type of visa, known as the "EB-1 visa," is the most preferential classification available for immigrants who are considered "priority workers," and so it is reserved for aliens whose credentials and accomplishments place them at the very top of their field.  This type of visa is highly desirable.  Unlike other employment-based visa petitions, the alien of exceptional ability may petition for this visa on his own behalf.  8 C.F.R. § 204.5(h)(1).  Likewise, this visa is not dependent on an actual offer for employment in the United States.  8 C.F.R. § 204.5(h)(3)(5).  More importantly, this visa is exempt from compliance with the time-consuming labor certification process that is required for other employment-based visas, which requires employers to first test the marketplace for existing qualified domestic workers.  8 C.F.R. § 204.5(h)(3)(5).  To qualify for an EB-1 visa, the petition need only show that the alien possesses the required level of sustained national or international acclaim and that he or she is coming to the United States to continue work in the area of expertise.  8 C.F.R. § 204.5(h)(3)(5).

The administrative record contains the following undisputed facts about Yasar's credentials and accomplishments. Born on November 5, 1977, Yasar is a twenty-eight-year-old native and citizen of Turkey.  Yasar received a Bachelor of Science degree in Aeronautical Engineering from the Middle East Technical University in Ankara, Turkey, in June of 1999. Yasar received a Master's Degree in Business Administration from the Saint

Louis University in St. Louis, Missouri, in May of 2001.  In 2002, Yasar was allowed to remain in the United States as a non-immigrant on a visa designated for temporary skilled workers, *i.e.*, an H1-B visa.  That visa will expire on or about May 14, 2008.

Yasar describes himself as a business intelligence analyst and developer.  Although the pleadings filed by Yasar do not offer any details about the field of business intelligence, an article presented at the administrative level explains that "business intelligence" consists of information technology or "decision support tools" that "enable real-time, interactive access, analysis and manipulation of mission-critical corporate information." *Business Intelligence - The Missing Link*, Administrative Record, at 46.  The field of business intelligence or "BI" apparently deals with the development of analytical software technology to organize and access vast amounts of accumulated information stored in "data warehouses" through the use of "online transaction processing (OLTP) systems and Enterprise Resource Panning (ERP) systems." *Id.* at 47. Business intelligence tools of this sort are designed to "extend the value of corporate information through sophisticated analytical processing and rapid delivery and presentation of accurate information to executives, managers, analysts and other knowledgeable workers." *Id.*  Thus, the business intelligence analyst develops software tools that query, report, and analyze stored business data for these "end-users."  *Id.*

Other than pointing to a series of letters of recommendation from colleagues, which consist mainly of technical jargon, Yasar does not offer any helpful description of his accomplishments in the field of business intelligence.  The record shows that, after completing his graduate degree, Yasar worked as a freelance "Data Warehouse Analyst" for

Solutions Center, LLC in St. Louis from June of 2001 through February of 2002.   In February of 2002, Yasar began work as a consultant for Rapidigm, Inc., with the Warranty Management System project undertaken by the Enterprise Systems Group at the Hewlett-Packard Company. During that project, Yasar reportedly designed an online analytical processing system and a reporting system.  His work resulted in an original "drill-through algorithm" that allows end-users to see "detailed data rather than aggregated data" from different sources.

In October of 2002, Yasar began work as a consultant with the Enterprise System Development Group at Waste Management, Inc., in Houston, Texas, where he purportedly designed a unique "optimization algorithm in a Multidimensional Expressions (MDX) generator application."  That algorithm is reportedly used to allow "cross-joining" of queries with respect to different databases storing information from diverse sources, such as finance data, marketing data, accounting data, with regard to different perspectives such as product, geography, time, and corporate organization.  The algorithm designed by Yasar is said to eliminate unnecessary access of "fact table data" from sources where "no associated data" is present, resulting in substantially reduced query response times and consumption of "hardware resources."

In October of 2003, Yasar began working through a firm named ObjectWin Technology, Inc., as a business intelligence systems analyst.[1]  That same month, Yasar filed

---

[1]    The letter presented in the administrative record simply states that ObjectWin Technology represents Yasar "in employment negotiations," which suggests that he is a contract worker
(continued...)

an Immigrant Petition for Alien Worker (Form I-140) for an EB-1 visa, classifying him a priority worker with extraordinary ability.  Yasar's visa petition was processed at the USCIS Regional Service Center in Vermont and denied on August 4, 2004.  Yasar filed an appeal with the Administrative Appeals Unit, which affirmed the Service Center's decision on June 2, 2005.  Yasar then filed the pending complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act, 5 U.S.C. § 706, seeking a declaration that the denial of his visa petition was "arbitrary, capricious, erroneous, invalid, unauthorized, an abuse of discretion, and not in accordance with law." *Complaint*, ¶ 27. Yasar asks this Court to vacate that decision and to grant his visa petition or, alternatively, to remand his case for further administrative proceedings.

Yasar has filed motion for summary judgment, arguing that he is entitled to the EB-1 visa.  The defendants have filed a cross-motion for summary judgment, arguing that Yasar is not eligible for the visa that he seeks because he does not qualify under the statutory criteria that defines an alien of extraordinary ability.  The parties' contentions are discussed below in light of the governing legal standards.

## II.    <u>STANDARD OF REVIEW</u>

The parties' motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings,

---

[1]    (...continued)
who renders services for other entities besides ObjectWin Technology.  *Karande Letter*, Administrative Record, at 133.  There is no other information, however, about his current employment status.

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden is on the moving party to show that "there is an absence of evidence to support the nonmoving party's case." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted).  All facts and inferences are viewed "in the light most favorable to the nonmoving party[.]" *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005) (citation omitted). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* (citation omitted).  "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (citation omitted).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings.  *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence.").  Likewise, the nonmoving party "cannot satisfy this burden with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman*, 369 F.3d at 860 (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove the necessary facts. *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir. 1995).

## III.   LEGAL ANALYSIS

### A.   Judicial Review of Administrative Decisions

Yasar seeks declaratory relief from the administrative decision denying his application for an employment-based immigrant visa.  The Declaratory Judgment Act, codified as amended at 28 U.S.C. § 2201(a), provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." The declaratory judgment statutes are not an independent basis for subject matter jurisdiction in the district courts. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950).

In this instance, Yasar invokes jurisdiction under the Administrative Procedures Act (the "APA"), 5 U.S.C. § 706.  The USCIS enjoys broad discretion in deciding whether to grant or deny visa petitions. *See Louisiana Philharmonic Orchestra v. INS*, 44 F. Supp. 2d 800, 802 (W.D. La. 1999).  In conducting a review under the APA, an agency determination shall not be set aside unless it is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *National Hand Tool Corp. v. Pasquarell*, 889 F.2d 1472, 1475 (5th Cir. 1989).  The scope of review "is narrow and deferential,

requiring only that the agency 'articulate a rational relationship between the facts found and the choice made.'" *City of Abilene v. United States EPA*, 325 F.3d 657, 664 (5th Cir. 2003) (citing *Alenco Communications, Inc. v. FCC*, 201 F.3d 608, 619-20 (5th Cir. 2000) (quotation omitted)).   Under this deferential standard, a court reviewing an agency action may not substitute its own judgment for that of the agency.   *See Louisiana Environmental Action Network v. United States EPA*, 382 F.3d 575, 582 (5th Cir. 2004).   "If the agency's reasons and policy choices conform to minimal standards of rationality, then its actions are reasonable and must be upheld." *Texas Oil & Gas Assoc. v. EPA*, 161 F.3d 923, 934 (5th Cir. 1998).

> **B.**   **Aliens of Extraordinary Ability**

Yasar seeks an EB-1 immigrant visa, which is designated for "priority workers" who have demonstrated an "extraordinary ability" in the fields of science, art, education, business, or athletics.[2]   8 U.S.C. § 1153(b)(1)(A).   An alien fits within this preferential category of aliens with extraordinary ability for purposes of the EB-1 visa if he or she meets the following statutory definition:

> (1)   the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by *sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation*;
>
> (2)   the alien seeks to enter the United States to continue work in the area of extraordinary ability; and

---

[2]   A separate category of EB-1 visa, which is not at issue here, exists for aliens who are deemed "outstanding professors or researchers."   8 U.S.C. § 1153(b)(1)(B).

(3)     the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A) (emphasis added). "Extraordinary ability" is defined as "a level of expertise indicating that the individual is one of that small percentage who have risen to the very top of the field of endeavor." 8 C.F.R. § 204.5(h)(2). "A petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his or her achievements have been recognized in the field of expertise." 8 C.F.R. § 204.5(h)(3). The extensive documentation required to qualify under this category "shall include evidence of a one-time achievement (that is, a major, international recognized award)," or evidence showing that the alien fits within at least three of the following ten categories:

(i)     Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

(ii)    Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(iii)   Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

(iv)    Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

(v)     Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi)    Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii)   Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii)  Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix)    Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x)     Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

8 C.F.R. § 204.5(h)(3).  It is well settled that the applicant for a visa bears the burden of establishing eligibility under the relevant criteria.  *See National Hand Tool*, 889 F.2d at 1475; *see also* 8 U.S.C. § 1361("Whenever any person makes application for a visa . . . the burden of proof shall be upon such person to establish that he is eligible to receive such visa[.]") .

The visa classification for extraordinary ability is an "extremely restrictive" one. *Lee v. Ziglar*, 237 F. Supp. 2d 914, 919 (N.D. Ill. 2002).  An example of an individual who qualifies as an alien with extraordinary ability is professional golfer Nick Price, a native of Zimbabwe, whose petition was extensively documented with awards, information about his ranking from a professional association, affidavits about his abilities from world-famous golfers as well as experts, and numerous articles from national publications documenting his accomplishments in the field:

The record reflects his winning the 1980 Swiss Open, finishing second in the 1982 Open Golf Championships, and securing the South African Order

of Merit in 1982 and 1983. The petitioner also won the 1983 World Series of Golf. In 1991, he was victorious in both the Byron Nelson Classic and the Canadian Open. The petitioner's tournament winnings exceeded $266,000 in 1988, $295,000 in 1989, and $400,000 in 1990. His 1991 earnings totaled $714,389.

According to the Professional Golfers' Association ("PGA") Official Statistics Profile, the petitioner had an all-around ranking of 10th on the PGA Tour in 1989. His money winnings in 1990 ranked him 26th and he finished 1991 ranked 7th in earnings for the entire PGA Tour. This is significant in view of the fact that there are more than 10,000 professional golfers in the world and over 600 playing professionals in the combined U.S. PGA Tours.

The record contains numerous affidavits in support of the petition from such well-known and celebrated golfers as Jack Nicklaus, Lee Trevino, Hale Irwin, Craig Stadler, and Tom Kite. As a result of witnessing the petitioner's play on the PGA Tour since 1982, his play on the European Tour, and his 1983 World Series of Gold Championship, acclaimed golfer Ben Crenshaw states that the petitioner "has achieved widespread international recognition and universal acclaim." Similarly, the Commissioner of the PGA Tour, Deane Beman, as well as other experts in the field of golf have submitted letters attesting to the petitioner's accomplishments in the sport.

The petition is also supported by numerous articles in such national publications as Golf Digest and Golf Magazine regarding the petitioner and his ability on the golf course. Virtually every major newspaper has covered the petitioner's progress in the world of golf. "[The petitioner] rightfully can take his place among the upper echelon [of professional golfers]," reported USA Today, for example, after the petitioner's victory on the PGA Tour in 1991.

*Matter of Price*, 20 I&N Dec. 953, 955-956 (BIA 1994) (footnote omitted). After considering all of this evidence, the Board of Immigration Appeals concluded that Price was "within the small percentage of individuals who have risen to the very top of the field of golf," that he had "sustained national or international acclaim and that his achievements have been recognized in the field of golf," and that Price therefore "qualifies as an alien of extraordinary ability in athletics." *Id.* at 956.

C.    **Yasar's I-140 Petition**

Yasar did not petition for an EB-1 visa based on a significant one-time achievement or major, international recognized award. Instead, his petition attempted to present evidence that, as a business intelligence analyst, he had attained the requisite sustained national or international acclaim as demonstrated by meeting the criteria found in at least three of the ten categories found in 8 C.F.R. § 204.5(h)(3). In that respect, Yasar endeavored to show that he had judged the work of others in his field (category four), that he had made original contributions of major significance (category five), that he had occupied a leading, critical role with distinguished companies (category eight), and that he commanded a high salary in comparison to others in his field (category nine). *See I-140 Petition*, Exhibits A-M, Administrative Record, at 76-133. In support of his petition, Yasar submitted copies of his undergraduate and graduate school diplomas, his curriculum vitae, letters of support from six colleagues, co-workers, or acquaintances (Monique Maddox, James Gilbertz, Miftah Ahmad, Johnathan Yeo, Simon Shurmer, and Dan Laury), which included information about Hewlett-Packard and Waste Management, as well as information about Yasar's salary.

The Director of the Vermont Service Center denied the petition after concluding that, although Yasar "appear[ed] to be one of many knowledgeable, talented and motivated individuals in [his] field," the record did not establish that he was eligible for classification as an alien with extraordinary ability. *Service Center Decision,* Administrative Record, at 72-75. Yasar filed a notice of appeal with the Administrative Appeals Unit and an appellate brief, which included a summary of Yasar's accomplishments by an expert (Professor

Kenneth E. Knight) and three supplemental supporting letters from individuals who previously had submitted material (Dan Laury, Miftah Ahmad, and Simon Shurmer). *Notice of Appeal and Appellate Brief*, Administrative Record, at 10-64. The Administrative Appeals Unit affirmed the original decision to deny the EB-1 visa and dismissed the appeal. *Appeals Unit Decision*, Administrative Record, at 2-8. Although the Appeals Unit agreed with the Service Center that Yasar was a "talented business intelligence systems analyst and developer," it concluded that Yasar failed to meet his burden to demonstrate extraordinary ability by presenting the requisite "extensive documentation of sustained national or international acclaim demonstrating that the alien has risen to the very top of his . . . field." *Id.* at 8.

In this instance, Yasar moves for summary judgment on the grounds that the decision by the Administrative Appeals Unit was an abuse of discretion and not in accordance with the law. In particular, Yasar points to categories four, five, eight, and nine and insists that the Administrative Appeals Unit wrongfully denied his visa petition because it incorrectly believed that he did not demonstrate the necessary sustained national or international acclaim by satisfying at least three of the ten above-referenced categories listed in 8 C.F.R. § 204.5(h)(3). The defendants disagree, arguing that Yasar failed to meet his burden to satisfy any of the ten criteria found in § 204.5(h)(3). A review of the evidence Yasar submitted in support of the four asserted categories shows that he has not demonstrated that the administrative decision to deny his EB-1 Visa request lacked a rational basis, was otherwise arbitrary and capricious, or was an abuse of discretion. Yasar's documentation

does not demonstrate he possesses the sustained level of national or international acclaim required to establish extraordinary ability for purposes of the EB-1 Visa.

### 1.    Category Four: Judging the Work of Others in the Field

Yasar argues that he presented sufficient evidence of his "participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought."  8 C.F.R. § 204.5(h)(3)(iv).  In support of this claim, Yasar points to two letters from Dan Laury, who is an Account Manager for the "specialty staffing firm" Kforce Company in Houston, Texas. *Laury Letter*, Administrative Record, at 127-28.  According to Laury's initial letter, Yasar was not employed by Kforce, but he apparently was placed as a consultant with another company through Kforce.  *Id.* at 127.  Laury notes in that letter, without providing any details, that Yasar "voluntarily participated individually as a judge of the work of other professionals in the field of [business intelligence] [a]nalysis and [d]esign through many technical interviews."  *Id.* at 128.  In a supplemental letter presented to the Administrative Appeals Unit, Laury explained that Kforce used Yasar's "judgments to determine the degree of expertise of other consultants in the field of [business intelligence systems analysis and design]." *Supplemental Laury Letter*, Administrative Record, at 35.  Laury clarified that Yasar was not employed by Kforce for this purpose, that Yasar did not "perform judging [of] other professionals as a part of his employment," and that such judging was not "required by his employment." *Id.*

The Service Center found no evidence in the record that Yasar had "participated on a panel or individually as a judge of the work of others in the field, beyond that required by his current and previous employment." *Service Center Decision*, Administrative Record, at 73. The Administrative Appeals Unit affirmed the Service Center's decision, holding that the evidence presented was insufficient to satisfy the fourth category because, while Laury's comments reflect his respect for Yasar's "expertise" in the field of business intelligence analysis, "it only establishes the fact that the petitioner once helped Kforce [C]ompany interview other [business intelligence] systems professionals." *Appeals Unit Decision*, Administrative Record, at 4. The Administrative Appeals Unit found that this "single service for one company does not reflect the sustained acclaim requisite to classification as an alien with extraordinary ability." *Id.* Yasar argues that this decision was an erroneous interpretation of 8 C.F.R. § 204.5(h)(3)(iv), which simply requires that he judged the work of others in the field.

The information presented by Yasar shows that he voluntarily assisted Kforce by developing a method to evaluate other business intelligence analysts and assisted Kforce staff in interviews that company had a business intelligence analysts. This work was not a part of his professional responsibilities. He did so apparently to enable Kforce to perform its private job placement services by effectively finding other potential candidates for employment as "consultants" with hiring organizations. As Laury states in his letter, the assessment of skills possessed by current and potential consultants was undoubtedly

"essential" for the success of Kforce as a placement firm.[3]  Yasar fails to show, however, that this service for a private entity constitutes evidence of an applicant of "sustained national or international acclaim" that the criteria in 8 C.F.R. § 204.5(h)(3) are designed to identify. *Compare Buletini v. INS*, 860 F. Supp. 1222, 1231 (E.D. Mich. 1994) (finding that an Albanian doctor satisfied the criteria found in 8 C.F.R. § 204.5(h)(3)(iv) where he served as the chief or chairman of more than one hospital committee responsible for judging the research or scientific work performed by other doctors).  Assisting a private job placement agency rate candidates for job placement is not professional service of the prestigious character that is the focus of category four, such as being on a review panel for a peer-reviewed scientific journal or a member of an expert jury in a juried art show.  Yasar thus fails to establish that the administrative decision on category four was not rational, was arbitrary or capricious, was an abuse of discretion, or was not in accordance with law.  *See* U.S.C. § 706(2)(A).  Accordingly, he fails to demonstrate that the agency's decision should be overturned on the basis of category four.

---

[3]    Laury states in his supplemental letter to the Administrative Appeals Unit that Kforce asked Yasar to "participate individually as a judge of the work of other professionals" because Yasar is an "internationally renowned Business Intelligence Systems Analyst/Developer through his accomplishments and contributions in this field . . . ." *Supplemental Laury Letter*, Administrative Record, at 35.  There is no evidence whatsoever in the record that Yasar is, in fact, "internationally renowned." Laury's statement is unsupported, conclusory, and self-serving. Likewise, Laury makes clear that Yasar was never employed by Kforce.  Laury's statement begs the question why a staffing company would retain the services of such an "internationally renowned" analyst to evaluate other professionals for possible placement, but would not compensate him in some way for his "essential" contribution.

### 2.      Category Five: Original Contributions of Major Significance

Yasar argues that he satisfies category five because he has made original business-related contributions "of major significance in the field."  8 C.F.R. § 204.5(h)(3)(v).  As proof that he meets the criteria in this category, however, Yasar merely points in general to evidence found in the record, which describes his work at Hewlett-Packard and Waste Management.  He does not elaborate or describe with any detail how this work was "original" or how any of it is considered of "major significance" in the field of business intelligence.

Yasar fails to appreciate that the defendants have filed a cross-motion for summary judgment in this case.  In addition to the fact that it is his burden to show that he is entitled to the visa that he seeks, Yasar's conclusory assertions and his general reference to evidence in the record are insufficient to meet his summary judgment burden.  When evidence exists in the summary judgment record but the nonmovant fails to refer to it specifically in the response to the motion for summary judgment, that evidence is not properly before the district court. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003)  (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 916 (5th Cir. 1992), *cert. denied*, 506 U.S. 832(1992)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citing *Ragas*, 136 F.3d at 458; *Stults*, 76 F.3d at 657; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *Skotak*, 953 F.2d at 916 n. 7; *see also Nissho-Iwai American Corp. v. Kline*,

845 F.2d 1300, 1307 (5th Cir. 1988) (it is not necessary "that the entire record in the case

. . . be searched and found bereft of a genuine issue of material fact before summary

judgment may be properly entered"); *cf. United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).

The administrative record contains letters from Monique Maddox, who was the

project manager at Waste Management's Enterprise System Development Group when Yasar

worked there, and two other business intelligence consultants, Johnathan Yeo and Simon

Shurmer, both of whom apparently worked with Yasar while he was with the Waste

Management Enterprise System Development Group. As referenced above, these letters state

that Yasar was responsible for designing a unique "optimization algorithm" that was used

to speed query response times in connection with an innovative business-to-business

information system used by Waste Management to communicate "financial and accounting"

information to its customers. There are also letters from James Gilbertz, who was a project

manager at Hewlett-Packard's Enterprise Systems Group, and another consultant named

Miftah Ahmad, who works for a company that supports business intelligence systems

developed by Hewlett-Packard's Enterprise Systems Group. These letters reflect that Yasar

had several important accomplishments as a business intelligence consultant for a project

undertaken by Hewlett-Packard's Enterprise Systems Group, including the development of

a "unique drill-through code."

The Service Center concluded that the evidence presented by Yasar, which consisted

of letters from associates or people familiar with his work, was not sufficient to establish his

eligibility under the fifth category in 8 C.F.R. § 204.5(h)(3). *Service Center Decision*, Administrative Record, at 73. In particular, the Service Center stated that the letters presented by Yasar did not indicate that he had "garnered sustained national or international acclaim" because, although his contributions were undoubtedly valuable to his employers, there was no evidence that his accomplishments had been recognized "beyond the circle of his personal and professional acquaintances." *Id.*

The Administrative Appeals Unit affirmed, finding that the letters of recommendation provided valuable information about Yasar's experience and accomplishments, but that they did not demonstrate that his work was "of major significance in his field beyond the limited number of individuals with whom he has worked directly." *Appeals Unit Decision*, Administrative Record at 5. The Appeals Unit noted that Yasar presented an additional letter from an "independent expert," Kenneth E. Knight, who is a Professor of Information Systems and Management at Seattle Pacific University. The Appeals Unit discounted the letter from Professor Knight, however, because it merely summarized the other letters and offered "no additional substantive analysis of the petitioner's contributions to his field." *Id.* The Appeals Unit acknowledged the glowing accounts of Yasar's accomplishments found in the letters of support as a testament to the value of his work for Waste Management and Hewlett-Packard. The Appeals Unit concluded, however, that the letters did not "establish that his work made original contributions of major significance to his field at large that reflect the requisite sustained [national or international] acclaim." *Id.* at 6.

The Court has reviewed the letters of recommendation presented by Yasar and agrees that, although Yasar's contribution was clearly important to the projects undertaken by his employers, there is no evidence that Yasar's contributions had the requisite significance outside of these ventures in the field of business intelligence. *Compare Buletini*, 860 F. Supp. at 1232 (finding evidence that the applicant, an Albanian doctor who had received a Medal For Good Service to the Albanian public from the country's highest governing body, had authored original scientific work of major significance to his field where he had published a book on the history of public health in Albania, a German-Albanian medical dictionary of great practical contribution to scientific education and research, and a study regarding dispensary facilities that was printed in the largest national newspaper in Albania). Absent this type of evidence, Yasar does not show that the administrative decision failed to comport with the law, that the agency abused its discretion when it found that he failed to meet the criteria set out in 8 C.F.R. § 204.5(h)(3)(v), or that this decision lacked a rational basis.

### 3.   Category Eight: Performing a Leading, Critical Role With Distinguished Companies

Yasar argues that he satisfies category eight because he "has performed in a leading or critical role for organizations or establishments that have a distinguished reputation." 8 C.F.R. § 204.5(h)(3)(viii). In support, Yasar points to the letter from Monique Maddox, who was the project manager at the Waste Management Enterprise System Development Group, which was responsible for developing a novel business-to-business information system developed by. *Maddox Letter*, Administrative Record at 91-93. Maddox states that Yasar

"assumed a leading and critical role in this crucial and major project" by designing "MDX structures to be used by reports to query the multidimensional database server." The record also contains a letter from James Gilbertz, a project manager at the Hewlett-Packard Enterprise Systems Group. *Gilbertz Letter*, Administrative Record, at 97-99. Gilbertz describes Yasar as taking a "leading and critical role" on the project, which required the development of complex tools for "multidimensional [b]usiness [i]ntelligence reporting."

The Service Center determined that Yasar did not satisfy category eight because, although he had clearly "held positions of responsibility with various employers, the impact of his contributions . . . have not been adequately documented in the record through the submission of contemporaneous documentary evidence about the beneficiary." *Service Center Decision*, Administrative Record, at 74. The Service Center acknowledged that Yasar had "made meaningful contributions in the areas in which he has been employed and should be commended for his accomplishments. However, the same could be said about any number of individuals employed in [Yasar's] field of endeavor." *Id.*

The Administrative Appeals Unit affirmed the Service Center's decision, finding that he failed to adequately "establish the nature of his role within the entire organization or establishment and the reputation of the organization or establishment." *Appeals Unit Decision*, Administrative Record, at 6. Noting that the letters and additional information presented by Yasar demonstrate the "significance of the petitioner's contributions to specific projects for two companies where he worked as a consultant, they do not establish that he held a leading or critical role for the companies or the specific departments in which he

worked." *Id.* at 7.  In other words, the agency found that it was not enough to show that Yasar occupied a leading or critical role as a consultant on a project where the information failed to show what role he or each of his projects played within the overall organization: "The record indicates that the petitioner's work as a consultant was highly valued, but the evidence does not establish that the petitioner's role extended beyond the discrete projects on which he worked."  Also, the Administrative Appeals Unit noted that there was no evidence in the record showing that the Enterprise Systems Group at Hewlett-Packard or the Enterprise System Development Group at Waste Management "have distinguished reputations independent of the companies themselves."

As Yasar notes, there is no dispute that Hewlett-Packard has a distinguished reputation as a company that produces "IT infrastructure, personal computing and access devices, global services and imaging and printing for consumers, enterprises, and small and medium businesses."  *HP Website Information*, Administrative Record, at 121. Likewise, there is no dispute that Waste Management has a distinguished reputation as a company that provides waste "collection, transfer, recycling, resource recovery and disposal services." *Maddox Letter*, Administrative Record, at 91.  Although Yasar clearly occupied a critical role as a consultant in relation to the projects undertaken by the Waste Management's Enterprise System Development Group and Hewlett-Packard's Enterprise Systems Group, there is insufficient evidence that Yasar's actual role was a leading or critical one at either of these distinguished organizations.  Because there is no evidence that Yasar occupied such a leading or critical role, the Administrative Appeals Unit did not abuse its discretion or fail

to comport with the law.  The Appeals Unit's decision also did not lack a rational basis in finding that Yasar failed to meet the eighth category set out in 8 C.F.R. § 204.5(h)(3)(v).

### 4.      Category Nine: Commanding a High Salary in the Field

Yasar argues that he satisfies category nine because he "has commanded a high salary or other significantly high remuneration for services, in relation to others in the field."  8 C.F.R. § 204.5(h)(3)(ix).  As one district court has explained, the theory behind this category is that if the plaintiff is paid significantly more than others in his field, then the general deduction to be made is that the plaintiff "must be better" than those others, indicating "perhaps" that he is of extraordinary ability.  *Buletini*, 860 F. Supp. at 1231.

The Service Center reviewed the exhibits and concluded that Yasar failed to meet the criteria found in category nine regarding his salary.  *Service Center Decision*, Administrative Record, at 74. Although it found that Yasar "enjoys a generous level of compensation," the Service Center noted that "many individuals employed in comparable positions" are also highly compensated.  *Id.*

The Administrative Appeals Unit held that the Service Center's ultimate decision was correct, noting that Yasar's purported salary of $130,000 to $140,000 per year was actually lower than the salaries of the other business intelligence professionals who had written letters of support.  *Appeals Unit Decision*, Administrative Record, at 7.  In that regard, two other business intelligence consultants who had been Yasar's colleagues at Waste Management (Johnathan Yeo and Simon Shurmer) reportedly earned $160,000 and $155,000 per year, respectively.  These salaries are materially higher Yasar's compensation.

The Appeals Unit added that there was no "primary evidence" in the record of Yasar's actual salary or remuneration while he was employed at Waste Management or Hewlett-Packard.  The I-140 petition filed by Yasar simply indicates that his wages exceed $100,000 in his present position. *See I-I40 Petition*, Administrative Record, at 77.  A letter from Santosh S. Karande, President of ObjectWin Technology where Yasar is presently employed as a consultant, discloses that Yasar commands $64.00 per hour.  *Karande Letter*, Administrative Record, at 133.  The Appeals Unit notes that this figure appears substantially lower than the amounts reported by Yasar's previous project manager, Mr. Gilbertz, who stated that Yasar's services "are worth $75-$85 an hour or $150,000 - $160,000 a year." Observing that Yasar failed to meet his burden of proof, the Appeals Unit agreed that Yasar did not meet the criteria found in category nine of showing that he commanded a high salary in relation to others in his field.  Thus, although the evidence indicates that Yasar was highly compensated for his work, it does not clearly show that he commanded a high salary "in relation to others in the field."  Yasar fails to show that the administrative decisions made by the Service Center or the Appeals Unit were not in compliance with the law or that either was an abuse of discretion.

Yasar objects that the Service Center should have requested additional evidence of his salary if there was any doubt about his actual level of remuneration.  Yasar argues, therefore, that this Court should remand his case for additional consideration on this issue. Yasar does not present any additional information for this Court's review to show what difference additional fact finding would make in this case.  Even assuming that Yasar could

satisfy the criteria found in category nine, he needed to satisfy three out of the ten categories listed in 8 C.F.R. § 204.5(h)(3) in order to be eligible for consideration for the EB-1 visa. As discussed above, Yasar has not shown he satisfied two of the other required categories. Accordingly, the Court declines to remand this case for additional fact finding.

## VI.   **CONCLUSION AND ORDER**

In conclusion, the record establishes that Yasar is a very talented business intelligence analyst and that he has performed exceptional work as a consultant on behalf of information technology departments at two distinguished companies.  The record does not establish, however, that Yasar occupies the small percentage of individuals who represent the very top of his field.  Thus, Yasar falls short of the statutory definition for demonstrating the sustained national or international acclaim required to confer the status of extraordinary ability.  More importantly, because the Administrative Appeals Unit clearly reviewed the applicable statute, regulation, and precedent, and explained in a rational manner its analysis of the evidence and arguments, Yasar fails to show that the administrative agency abused its discretion or that he is otherwise entitled to a judgment in his favor under the required deferential standard of review.  Yasar has not met his burden to warrant summary judgment in his favor and has not demonstrated a basis to deny the defendants' motion.

Based on the foregoing, Yasar has failed to show that he is entitled to the visa reserved for aliens of extraordinary ability or that USCIS wrongly denied his petition. Therefore, the Court **ORDERS** as follows:

1.     The plaintiff's motion for summary judgment [Doc. #10] is **DENIED**, and the

defendant's cross-motion for summary judgment [Doc. #11] is **GRANTED**.

2.     This case is **DISMISSED** with prejudice.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas on **March 24, 2006.**

_____
Nancy F. Atlas
United States District Judge